IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00048-KDB-DSC

| | |
|---|---|
| **BENNIE ROBERT ANDERSON,**<br><br>Plaintiffs,<br><br>v.<br><br>**PARKWAY ACQUISITION CORP., ET AL.,**<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on the parties' motions in limine, (Doc. Nos. 48, 52), in which they ask the Court to exclude certain witnesses and evidence. The Court has carefully considered these motions, the parties' briefs, and oral argument on the motions from the parties' counsel on September 13, 2022. For the reasons and in the manner discussed below, the Court will partially grant and partially deny the motions.

**Plaintiff's Motion in Limine**:[1]

In his First Motion in Limine, Plaintiff asks the Court to 1) exclude the testimony of Barry Lee Bryant and 2) exclude "documents and witnesses not timely disclosed in accordance with the Court's Scheduling Order" (without identifying any particular document or witness). This motion can be quickly resolved. Both parties have asked the Court to exclude Mr. Bryant as a witness so

---

[1] The Court notes that Plaintiff failed to file a separate memorandum of law in support of his motion. *See* Local Rule LCvR 7.1(c). Also, **both** parties failed to "show that counsel have conferred and attempted in good faith to resolve areas of disagreement." Local Rule LCvR 7.1(b). Indeed, had the parties met as required, at least a portion of Plaintiff's motion would have been unnecessary because each of the parties separately moved to exclude Barry Lee Bryant as a witness. Similarly, Defendants would have had no need to file a motion to exclude evidence of "emotional distress," which Plaintiff does not plan to introduce.

1

it appears that neither party intends to call him as a witness, making it unnecessary for the Court to rule on his exclusion. Similarly, in the absence of the identification of a specific witness or document that Plaintiff seeks to exclude as untimely, the Court will not rule on that request (and declines to broadly do so in a blanket order without contextual information).

**Defendants' Motion in Limine**:

Defendants request that the Court preclude evidence and argument relating to the following:

1. Any conduct or statements of Defendants' employees that did not occur within 180 days of Plaintiff's filing of his EEOC Charge;

2. Evidence regarding settlement discussions;

3. Information about other employees who are not proper comparators to Plaintiff;

4. Allegedly "irrelevant" financial information;

5. Barry Lee Bryant's ("Bryant") Lay Witness Testimony;

6. Evidence regarding equitable remedies; and

7. Evidence regarding alleged emotional distress.

Each item is discussed below.

**Conduct or Statements more than 180 days before Plaintiff's EEOC Charge**

Defendants ask the Court to prohibit Plaintiff from introducing *any* evidence of conduct or statements that occurred more than 180 days prior to the filing of Plaintiff's EEOC charge as "outside the statute of limitations." The Court will deny this motion. Very recently, the Fourth Circuit Court of Appeals rejected a similar argument in *Chapman v. Oakland Living Ctr., Inc.*, ____ F.4th_____, No. 20-2361, 2022 WL 3954456, at *10 (4th Cir. Aug. 30, 2022). In *Chapman*, the Court of Appeals reversed and remanded a District Court grant of summary judgment for an

2

employer on claims of employment discrimination, holding that the District Court had erred in not considering alleged acts of discrimination that predated by several years the specific acts on which the plaintiff had filed her EEOC charge. Citing Supreme Court precedent, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Court of Appeals ruled that plaintiff is entitled to "us[e] the prior acts as background evidence in support of [her] timely claim[s]." *Chapman*, 2022 WL 3954456, at *10. The same result must apply here. Defendant's motion to exclude evidence as "untimely" is denied and Plaintiff will be permitted to offer otherwise relevant evidence of prior alleged discriminatory conduct as background evidence that he contends supports his claims related to Defendants' discriminatory intent, undermines the credibility of Defendants' witnesses, and addresses other relevant issues.

However, the Court finds, based on the current record before the Court, that evidence of certain statements in 2013-2014 – many years before the termination of Plaintiff's employment by a successor bank in 2020 - is unlikely to be admitted. Plaintiff contends that statements made by one of the same executives ultimately involved in his termination asking about his retirement plans should be admitted to show discriminatory animus. The Court disagrees. Even repeated questions about retirement, which might be relevant as part of an *ongoing* pattern of age related statements, are not relevant to the present dispute if they are disconnected at a distance of six to seven years from Plaintiff's termination.[2] Similarly, truly isolated comments that Plaintiff was "long in the tooth" or "slowing down" that are years removed from the decision to terminate are not sufficiently

---

[2] At oral argument, Plaintiff argued that a series of emails in February 2020 (SKYLINE000321-323, SKYLINE000385-386) connected this historical evidence to Plaintiff's termination. However, those emails, which related to a 2014 effort to assess and improve the performance of the bank's Boone office, make only a passing reference to the prospect of Plaintiff's future retirement and do not appear to reflect any evidence of age discrimination that could be connected to the termination of Plaintiff's employment in 2020.

3

probative of age discrimination connected to the termination to be admissible into evidence. In sum, while the Court would allow Plaintiff to establish an ongoing pattern of age-related statements and conduct leading up to his termination or to respond to evidence presented by Defendants,[3] at this point the proffered testimony discussed above appears to be too attenuated and limited to allow its introduction into evidence.

**Settlement Discussions**

At the time that Defendants terminated Plaintiff's employment, Defendants offered him a severance agreement, which proposed, as is typical with such agreements, a severance payment (in this case eight weeks of salary) and other benefits in consideration for a broad release of claims against the company, including claims for age discrimination. Plaintiff chose not to accept the agreement, but has identified an internal company email chain related to the proposed agreement (SKYLINE 000310-000314) as a potential trial exhibit. Defendants ask the Court to exclude the email chain, the proposed agreement itself (SKYLINE 000026-000034), and related deposition testimony (Thornton Dep. pp. 16-21 and Anderson Dep. pp. 140-142) as "settlement discussions" under Fed. R. Evid. 408. In response, Plaintiff argues, without citation to authority, that this evidence may be admitted because the email thread was not communicated to Plaintiff (and thus was not a settlement offer or negotiation) and the email thread "tend[s] to show" Defendants' employee's bias or prejudice against Plaintiff's age. The Court agrees with Defendants and will exclude this evidence.

The severance agreement and release proposed by the Defendants plainly reflects "offering … a valuable consideration in … attempting to compromise [a] claim" and therefore is within the

---

[3] To be clear, if Defendants present historical evidence related to retirement discussions involving the Plaintiff, then Plaintiff will be permitted to present evidence of the full context of such discussions.

scope of the evidence which must be excluded as compromise offers and negotiations under Fed. R. Evid. 408. And, internal emails discussing such agreements, unless independently relevant and admissible for other purposes, which this email is not,[4] are similarly protected. Indeed, if the rule were otherwise, there would be no practical way for proposed settlement agreements to be discussed and prepared in the first place, which would chill the settlement conduct that the rule seeks to encourage.

Accordingly, Defendants' motion to exclude SKYLINE 000310-000314, SKYLINE 000026-000034, Thornton Dep. pp. 16-21 and Anderson Dep. pp. 140-142 as "settlement discussions" under Fed. R. Evid. 408 is granted.

**Comparators Who Defendants Claim are Dissimilar**

In support of its claims of age discrimination, Plaintiff intends to argue, in part, that the performance goals suggested as the reason for Plaintiff's termination were not truly "legitimate" goals and Defendants' claim that he was terminated for failing to meet his performance goals was only a pretext for discrimination because other, younger employees who did not meet their performance goals were not terminated for their similar failures. Defendants have moved the Court to exclude this evidence (SKYLINE 001401 and SKYLINE 000005) on the grounds that all of the employees being compared are not "similarly-situated" as a matter of law. More specifically, Defendants argue that because many of the employees – most of whom were commercial lenders with the same production goals – had different supervisors and some had different official titles (for example Vice President rather than Senior Vice President) they are not proper comparators.

---

[4] The Court has reviewed the email thread in dispute, which reflects nothing more than company employees discussing the logistics of when and how the proposed agreement (which is referenced as being attached to one of the earlier emails in the chain) will be presented to Plaintiff. There is no mention of Plaintiff's age in the email thread. Therefore, it has no independent relevance to Plaintiff's age discrimination claims.

5

However, as with its "statute of limitations" argument above, Defendants' rigid, formulaic position is directly contradicted by recent Fourth Circuit authority. In *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 381–82 (4th Cir. 2022), the court, after first noting that it is "especially relevant" to a showing of pretext that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably,[5] held that there is no "bright line rule" for when two jobs or two employees are similar enough to be used for comparison. Rather, the fact finder should simply determine if the employees are similar in "all relevant respects." *Id*.

While "relevant considerations" may include whether the plaintiff and comparator "dealt with the same supervisor, [were] subject to the same standards and[,] ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), plaintiffs do not need to share the same supervisor or have the exact same title in every case. *Cowgill*, 41 F.4th at 382, citing *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) ("[T]he requirement that a plaintiff and her comparator 'must have dealt with the same supervisor' to be considered similarly situated does not automatically apply in every employment discrimination case."); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013) ("[W]e have never read 'the "same supervisor" criteri[on]' as an 'inflexible requirement.'"); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (concluding that same-supervisor requirement does not apply to all factual situations; rather, comparators must be similar in "relevant aspects").

---

[5] However, in making this statement the court also noted that a plaintiff is "not required as a matter of law to point to a similarly situated ... comparator in order to succeed," citing, *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003).

6

Here, the Court finds that there is sufficient evidence from which a reasonable jury can (but need not) decide that Plaintiff and the other identified commercial lenders are "similarly-situated" in all *relevant* aspects of their jobs. That is, they share the same basic qualifications, experience and job duties and, perhaps most relevant here, similar performance goals. Defendants can of course argue to the jury that all of the commercial lenders are not "similarly-situated," notwithstanding these similar circumstances. However, the Court cannot conclude that the commercial lenders identified on the documents Defendants seek to exclude are not "similarly-situated" as a matter of law and thus denies Defendants' motion in limine to exclude this evidence as to other commercial lenders (regardless of their supervisor, location or title).[6]

**<u>Allegedly Irrelevant Financial Information</u>**

Defendants also seek to exclude certain financial information reviewed by Plaintiff's damages expert, which they contend is irrelevant and was not directly relied upon by the expert in calculating Plaintiff's damages. Primarily, this financial information relates to Plaintiff's wife, Betty Anderson, including information on her social security benefits, retirement and pension account, investments, etc. In response, Plaintiff argues that his "total financial picture, and resulting losses, includes his wife's financial picture"; Defendants will not be prejudiced by the admission of this evidence; and under Fed. R. Evid. 703 Plaintiff's expert may rely on facts that would not otherwise be admissible.

The answer to this issue turns on the scope of the "back pay" remedy available to Plaintiff if he proves Defendants violated the ADEA. A prevailing Plaintiff is entitled to relief that "makes him whole." *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 763 (1976). "To make the plaintiff

---

[6] To the extent Plaintiff seeks to compare himself to other employees who are not commercial lenders (for example top executive managers) the motion in limine is granted.

whole, the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the period of termination to judgment, and the actual earnings during that period." *Crump v. United States Dep't of Navy*, 205 F. Supp. 3d 730, 746 (E.D. Va. 2016), quoting *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 230 (1982); *Cline v. Roadway Exp., Inc.*, 689 F.2d 481, 489 (4th Cir.1982). While back pay may include the value of fringe benefits in addition to lost salary, *see Long v. Ringling Bros.-Barnum & Bailey Combined Shows*, 882 F. Supp. 1553, 1560–61 (D. Md. 1995), the Court has not found any authority for the inclusion in a back pay award of ancillary, consequential or incidental damages of the type suggested by Plaintiff, i.e., losses of potential investment income on the retirement account money Plaintiff's wife needed to use to support the couple while Plaintiff was out of work. Accordingly, in the absence of persuasive authority for Plaintiff's position, the Court will at this time exclude evidence of Plaintiff's wife's financial investment losses related to the need to support Plaintiff.[7]

**Barry Lee Bryant Witness Testimony**

Like Plaintiff, Defendants seek to exclude the testimony of Barry Lee Bryant. As discussed above, neither side intends to call Mr. Bryant as a witness; therefore, this portion of Defendants' motion is moot.

**Evidence Related to Equitable Remedies**

If Plaintiff is successful in establishing that Defendants violated the ADEA, then he is entitled to pursue both legal and equitable remedies under the statute. In their motion, Defendants ask that the Court limit the damages evidence presented to the jury to only Plaintiff's legal

---

[7] However, because the Court is bifurcating the consideration of liability and damages, if Plaintiff proffers authority supporting the inclusion of such ancillary, consequential or incidental damages in a back pay award in advance of the conclusion of the liability phase of the case, the Court will reconsider this ruling.

8

remedies and exclude any evidence related to Plaintiff's equitable remedies. While the Court (and apparently the Plaintiff) agrees with the broad principle of reserving the presentation of evidence concerning equitable remedies for the Court, Defendants have (again) misstated the law in the Fourth Circuit, this time on the scope of legal remedies under the ADEA.

Defendants represent to the Court that back pay is an equitable remedy that must be determined by the Court. *See* Doc. No. 53 at 15. This is clearly incorrect. The Fourth Circuit has consistently held that "back pay awards under the ADEA are mandatory *legal* remedies, the amount of which is to be determined by a fact finder." [8] *Equal Emp. Opportunity Comm'n v. Baltimore Cnty.*, 904 F.3d 330, 335–36 (4th Cir. 2018) (emphasis in original), citing *Sailor v. Hubbell, Inc.*, 4 F.3d 323, 326 (4th Cir. 1993) (holding that the "appropriate amount of back pay" due under the ADEA is a question for the jury). Therefore, Plaintiff will be permitted to introduce evidence to the jury of back pay damages if Defendants are found to have engaged in unlawful discrimination.

However, as acknowledged by Plaintiff, "front pay, attorney's fees and costs, and other remedies" are equitable remedies to be decided by the Court. *See Duke v. Uniroyal Inc.*, 928 F.2d at 1424-25 (characterizing an award of front pay under the ADEA as an equitable remedy left to the discretion of the court because it has a "restitutionary nature"). Accordingly, evidence as to those additional remedies should not be presented to the jury but rather to the Court.

---

[8] In contrast, a back pay award under Title VII is a discretionary equitable remedy that a court may select in awarding relief to a plaintiff. *See EEOC v. Baltimore Cnty*, 904 F.3d at 335; *Lorillard* v. *Pons*, 434 U.S. 575, 584 (1978) ("[T]he ADEA incorporates the FLSA provision that employers 'shall be liable' for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of backpay is a matter of equitable discretion.").

9

In sum, Defendants' motion in limine is denied as to Plaintiff's evidence of back pay and economic damages flowing from Plaintiff's termination but is granted as to Plaintiff's equitable remedies as described above.

**Evidence of Emotional Distress**

Defendants' final request asks the Court to exclude evidence of the "emotional distress" Plaintiff allegedly suffered as a result of Defendants' discriminatory conduct. In response, Plaintiff has represented to the Court that he "does not seek to introduce evidence of emotional distress, as such damages are unavailable under the ADEA." Therefore, by consent of the parties, Plaintiff will not be permitted to introduce evidence of "emotional distress" as part of his damages evidence to the jury. However, to the extent that Plaintiff's personal reaction to Defendants' conduct is relevant to other issues (such as his efforts to look for other work) then it may be introduced, subject to objection to a specific question (which the Court will rule on at trial).

## ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Parties' respective motions in limine (Doc. Nos. 48, 52) are partially granted and partially denied as set forth above; and
2. This case shall proceed to trial on the merits on the Plaintiff's claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 14,

Kenneth D. Bell
United States District Judge